# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE HAWKINS, | |
| Plaintiff, | |
| v. | 2:13-cv-6068-WY |
| FEDERAL NATL. MORTG. ASSN. ("Fannie Mae"), SETERUS, INC., SAFEGUARD PROPERTIES, INC., and JOHN DOE, | |
| Defendants. | |

## MEMORANDUM

YOHN, J.                                                                                                          January 23, 2014

      Plaintiff Nicole Hawkins brings this action against the Federal National Mortgage Association ("Fannie Mae"), Seterus, Inc. ("Seterus"), Safeguard Properties, Inc. ("Safeguard"), and the unidentified company John Doe related to events in September 2011 affecting her residential property.

      Two motions to dismiss have been filed: one by Fannie Mae and Seterus, and another by Safeguard. After describing the factual and procedural background of this case and the legal standards applicable to a Rule 12(b)(6) motion, I will address each motion to dismiss separately. As a result of my analyses, I will dismiss Counts I, V, and VI of Hawkins' complaint as they pertain to Fannie Mae and Seterus, and I will dismiss Counts I, V, and VI of Hawkins' complaint as they pertain to Safeguard.

I.      **Factual and Procedural Background**

Hawkins is a Pennsylvania homeowner against whom her mortgagees, Fannie Mae and Seterus, commenced foreclosure proceedings in June 2010. After her home flooded in February 2011, Hawkins vacated the premises notwithstanding that, allegedly, she took steps to maintain possession. On September 8, 2011, Hawkins discovered she was barred from access to the home by a lockbox on the front door. She contacted Seterus, which informed her it believed the property was vacant and that Safeguard had been hired to winterize and secure the property. After several days of back and forth between Hawkins, Seterus, and Safeguard—including at least one heated exchange—Hawkins was contacted by a representative of the John Doe contracting company named Chris who told her the company would send someone to grant Hawkins access to the property. Hawkins alleges these events caused her great confusion.

Over a series of days across the remainder of September 2011, Hawkins' house was looted of valuable personal property; the back porch was strewn with garbage and debris; and internal fixtures were damaged. According to Hawkins' neighbors, the damage was caused by men who had told the neighbors they were there to winterize the property and had asked them if Hawkins still lived at the house. Hawkins re-contacted the John Doe representative, Chris, who told her his workers "were supposed to only secure the property, not do a clean out."

On September 26, 2013, Hawkins filed the instant suit in the Delaware County Court of Common Pleas. She makes claims against all defendants for: (1) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(4), by subjecting her to confusion over the source of the lockbox barring access to her home ("Count I"); (2) conversion, for the destruction and/or deprivation of her property ("Count II"); (3) trespass, for breaking and entering into her house ("Count III"); (4) negligence, for failing to

adequately vet the persons responsible for winterizing her home ("Count IV"); and (5) negligent infliction of emotional distress, for causing her confusion ("Count V"). Her complaint also includes a request for punitive damages ("Count VI").

On October 17, 2013, Fannie Mae and Seterus removed the case to this court on the basis of diversity jurisdiction. On November 19, 2013, Hawkins filed her amended complaint, which made the same claims as her original complaint. On December 9, 2013, Fannie Mae and Seterus filed a motion to dismiss the entire amended complaint under Rule 12(b)(6). That same day, Safeguard filed a motion to dismiss Counts I, V, and VI of the amended complaint under Rule 12(b)(6). I deal with these motions in turn.

## II.     Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). In determining whether a complaint is sufficient, a court takes note of the elements plaintiff must plead to state a claim, and accepting all factual allegations in the complaint as true, determine whether the plaintiff's well-pleaded factual allegations plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While a short and simple statement of entitlement to relief is all that is required to state a claim under Rule 8(a), vague or conclusory statements will not suffice: a claim is only plausible where the complaint pleads sufficient factual content to raise the right to relief above the speculative level. *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007). Any reasonable inferences that may be drawn from the complaint must be drawn in the light most favorable to the plaintiff. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## III.    Fannie Mae and Seterus

### A. Count I—UTPCPL

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501 (2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) ("[T]he Pennsylvania Supreme Court . . . has categorically and repeatedly stated that, due to the causation requirement in the Consumer Protection Law's standing provision, 73 Pa. Cons.Stat. § 201–9.2(a) . . . a private plaintiff pursuing a claim under the statute must prove justifiable reliance.").

Fannie Mae and Seterus contend in their motion that the amended complaint does not support a plausible inference that Hawkins justifiably relied on deceptive conduct, and that Hawkins' UTPCPL claim should be dismissed for that reason. Hawkins does not dispute this in her response. Rather, Hawkins responds this claim is valid because Seterus and Safeguard caused her confusion and that she suffered damages as a result. Notwithstanding that this response does not address the applicability of the claim to Fannie Mae, Hawkins' contention is contrary to the rule of the Pennsylvania Supreme Court, which requires justifiable reliance as an element of a UTPCPL claim. *See Yocca*, 578 Pa. at 501; *Hunt*, 538 U.S. at 221. Hawkins' amended complaint does not allege that she relied in any way on confusing representations by Fannie Mae or Seterus, nor does it allege facts that would support such a conclusion. Accordingly, Hawkins has failed to state a claim under the UTPCPL against Fannie Mae or Seterus.

### B. Count II—Conversion

In Pennsylvania, "[c]onversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell,* 365 Pa.Super. 481, 484, 530 A.2d 112, 114 (1987).

4

Fannie Mae and Seterus contend Hawkins failed to adequately plead conversion because (a) they never acquired possession of Hawkins' property, and (b) Hawkins' claims regarding the removal of personal property amount to mere speculation as to Fannie Mae and Seterus. In response, Hawkins states that "the contractors [who entered her property] were agents of Safeguard, which was an agent of Seterus, which was an agent of Fannie Mae. As such, the basic principles of the principal/agent relationship dictate that each Defendant is jointly and/or severally liable as the actual and/or proximate cause of Plaintiff's damages."

In her amended complaint, Hawkins alleged with particularity that the John Doe contractors removed substantial personal property from her home, and that these contractors were agents of Fannie Mae and Seterus. According to Hawkins, "[t]he chain of agency amongst the defendants slowly revealed itself to [her]: Fannie Mae hired Seterus, Seterus hired Safeguard, Safeguard hired [the contractor named Chris], and Chris and his company ransacked the house." This is sufficient to state a claim for conversion. *See Santiago*, 629 F.3d at 130.

### C.   Count III—Trespass

"Under Pennsylvania law, [trespass] is defined as an unprivileged, intentional intrusion upon land in possession of another." *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (internal quotation omitted). Fannie Mae and Seterus do not deny that they entered defendants' real property in order to secure its internal contents. Rather, they contend that this entrance was privileged under the mortgage contract between Hawkins and Fannie Mae, attached to their motion as Exhibit B.

Although a district court may consider documents integral to or explicitly relied upon in the complaint in deciding a motion to dismiss, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), Hawkins does not explicitly rely upon her mortgage agreement

5

with Fannie Mae nor is it integral to her amended complaint. Moreover, even if I were to consider the purported mortgage agreement provided by Fannie Mae and Seterus, that agreement permits the mortgagee to secure the property in the event of an abandonment, while Hawkins contends that she never abandoned the property. Such a factual dispute is better suited for summary judgment. Hawkins has stated a valid claim for trespass against Fannie Mae and Seterus.

        D.        Count IV—Negligence

"To establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 551 Pa. 496, 502 (1998). Fannie Mae and Seterus contend Hawkins failed to plead a "causal connection between [their] purported breach and [Hawkins'] purported damages." As to this contention, the amended complaint pleads Fannie Mae and Seterus breached duties to vet their subcontractors and to determine the proper record owner of the premises prior to ordering winterization and sealing, and does in fact plead that these breaches were the actual and proximate cause of Hawkins' damages. It is best left for a factfinder to determine whether the factual scenario that Hawkins describes in her amended complaint supports a causal link between the actions of Fannie Mae and Seterus and Hawkins' injuries. In short, Hawkins states a valid claim for negligence against Fannie Mae and Seterus.

        E.        Count V—Negligent Infliction of Emotional Distress

Absent a physical injury, there may only be a valid claim for negligent infliction of emotional distress in the context of "preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach." *Toney v. Chester*

6

*Cnty. Hosp.*, 614 Pa. 98, 117 (2011). Moreover, these relationships "must encompass an implied duty to care for the plaintiff's emotional well-being." *Id*.

Here, Hawkins contends she properly pled a claim for negligent infliction of emotional distress against Fannie Mae and Seterus because she alleged "defendants owed a fiduciary duty to the plaintiff to not destroy her house or its contents while in the process of winterizing it, as well as a duty to properly vet any of its contractors or vendors," and that they breached those duties. Regardless of whether that is true, Hawkins did not allege those duties "encompass an implied duty to care for [her] emotional well-being," *Toney*, 614 Pa. at 117, nor do I otherwise see how they would. Accordingly, Hawkins has failed to state a valid claim against Fannie Mae or Seterus for negligent infliction of emotional distress.

F.    **Count VI—Punitive Damages**

In Pennsylvania, the standard used for awarding punitive damages is set out in section 908(2) of the Restatement (Second) of Torts. *See Chuy v. Eagles Football Club,* 595 F.2d 1265, 1277 (3d Cir. 1979); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 747 (Pa. 1984). The Restatement provides: "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2) (1979); *see also Feld,* 485 A.2d at 747-48 (explaining that an award of punitive damages must be based on conduct that is malicious, wanton, reckless, willful, or oppressive). Therefore, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Feld,* 485 A.2d at 748. In evaluating a request for punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" *Id.* (quoting *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355, 358 (Pa. 1963)).

7

Here, Hawkins asserts "the defendants' constant passing of responsibility; trespassing onto plaintiff's property; and damage, destruction and theft of plaintiff's property all amount to wanton, reckless, and/or malicious conduct." Hawkins did not, however, make any allegations regarding any of the defendants' states of mind during the events in question, including the state of mind of Fannie Mae or Seterus. There is thus an absence of factual allegations necessary to support conclusions about Fannie Mae or Seterus's state of mind, including intent, recklessness, or maliciousness. *See Feld*, 485 A.2d at 748. Accordingly, Hawkins has failed to plead sufficient facts to support the imposition of punitive damages on Fannie Mae or Seterus.

IV.  Safeguard

  A.   Count I—UTPCPL

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501 (2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) ("[T]he Pennsylvania Supreme Court . . . has categorically and repeatedly stated that, due to the causation requirement in the Consumer Protection Law's standing provision, 73 Pa. Cons.Stat. § 201–9.2(a) . . . a private plaintiff pursuing a claim under the statute must prove justifiable reliance.").

Safeguard contends in its motion that, "while the plaintiff in this case arguably alleges some confusion, she fails to allege any facts demonstrating justifiable reliance." Hawkins does not dispute this in her response. Rather, Hawkins contends that she states a valid claim against Safeguard under the UTPCPL merely because Safeguard caused her confusion and that she suffered damages as a result. Hawkins' contention is contrary to the rule of law articulated by the Pennsylvania Supreme Court, which requires justifiable reliance as an element of a valid claim

8

under the UTPCPL. *See Yocca*, 578 Pa. at 501; *Hunt*, 538 U.S. at 221. Hawkins' amended complaint does not allege that she relied in any way on Safeguard's allegedly confusing representations, nor does it allege facts that would support such a conclusion. Accordingly, Hawkins has failed to state a claim against Safeguard under the UTPCPL.

    **B. Count V—Negligent Infliction of Emotional Distress**

  In Pennsylvania, absent a physical injury, a claim for negligent infliction of emotional distress may only be valid in the context of "preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach." *Toney v. Chester Cnty. Hosp.*, 614 Pa. 98, 117 (2011). Moreover, these relationships "must encompass an implied duty to care for the plaintiff's emotional well-being." *Id*.

  Here, Hawkins contends she properly pled a claim for negligent infliction of emotional distress against Safeguard because she alleged "Safeguard owed a fiduciary duty to the Plaintiff to not destroy her house or its contents while in the process of winterizing it, as well as a duty to properly vet any of its contractors or vendors," and that Safeguard breached these duties. Regardless of whether that is true, Hawkins did not allege those duties "encompass an implied duty to care for [her] emotional well-being," *Toney*, 614 Pa. at 117, nor do I otherwise see how they would. Accordingly, Hawkins has failed to state a valid claim against Safeguard for negligent infliction of emotional distress.

    **C. Count VI—Punitive Damages**

  In Pennsylvania, the standard used for awarding punitive damages is set out in section 908(2) of the Restatement (Second) of Torts. *See Chuy v. Eagles Football Club,* 595 F.2d 1265, 1277 (3d Cir. 1979); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 747 (Pa. 1984). The Restatement provides: "Punitive damages may be awarded for conduct that is outrageous,

because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2) (1979); *see also Feld,* 485 A.2d at 747-48 (explaining that an award of punitive damages must be based on conduct that is malicious, wanton, reckless, willful, or oppressive). Therefore, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Feld,* 485 A.2d at 748. In evaluating a request for punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" *Id.* (quoting *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355, 358 (Pa. 1963)).

Here, Hawkins asserts "the defendants' constant passing of responsibility; trespassing onto plaintiff's property; and damage, destruction and theft of plaintiff's property all amount to wanton, reckless, and/or malicious conduct." Hawkins did not, however, make any allegations regarding any of the defendants' states of mind during the events in question, including the state of mind of Safeguard. There is thus an absence of factual allegations necessary to support conclusions about Safeguard's state of mind, including intent, recklessness, or maliciousness. *See Feld*, 485 A.2d at 748. Accordingly, Hawkins has failed to plead sufficient facts to support the imposition of punitive damages on Safeguard.

Appropriate orders follow.